467 So.2d 721 (1985)
Herbert E. BLACKSHEAR, Appellant,
v.
BETHUNE COOKMAN COLLEGE and Liberty Mutual Insurance Co., Appellees.
No. BA-48.
District Court of Appeal of Florida, First District.
March 26, 1985.
Rehearing Denied May 14, 1985.
Mark A. Olewinski, Lake Mary, for appellant.
Paul Smalbein of Smalbein, Eubank, Johnson, Rosier & Bussey, Daytona Beach, for appellees.
JOANOS, Judge.
Claimant seeks review of a workers' compensation order in which the deputy refused to order a psychiatric evaluation and refused to award attorney's fees and costs incurred. We affirm in part, reverse in part, and remand with directions.
Claimant was employed by Bethune Cookman College as a counselor when on May 7, 1984, in the process of moving a box of books, he struck his right arm on a door frame. At first claimant ignored the injury, but when his arm began to turn dark and to swell he consulted his family physician, Dr. Parnell. Claimant was hospitalized from May 10, 1982, through May 23, 1982, due to thrombophlebitis of the axillary vein in his right arm. Claimant stated that from the date of his hospital discharge up until the date of the hearing in this *722 cause, he continued to have pain in his right arm and continued to receive treatment for his right arm from Dr. Parnell. Dr. Bolt, a vascular surgeon who examined claimant in consultation with Dr. Parnell during claimant's May 1982 hospitalization, concurred with Dr. Parnell's diagnosis that claimant's symptoms were related to axillary vein thrombosis. Dr. Parnell characterized claimant's present condition as "chronic venous insufficiency ... a post-phlebitic syndrome ... [with] constant swelling of the arm and ... periodic episodes where he does have pain."
On May 11, 1983, claimant filed a claim for benefits due to the arm injury. At the hearing, the deputy heard testimony of the claimant and a rehabilitation nurse. The rehabilitation nurse felt that claimant's disability was due primarily to athletic injuries he had sustained prior to the industrial injury. In addition, the employer and carrier proferred a medical report from a specialist in cardiovascular disorders, who had concluded that claimant did not have a significant vascular problem. Due to these conflicting medical reports and opinions, the deputy directed claimant to undergo an independent medical evaluation by Dr. Derbenwick, with cost to be borne by the employer and carrier.
Dr. Derbenwick examined claimant on July 26, 1983, and diagnosed his condition as right cervical radiculopathy involving the C-6 and C-7 nerve roots. In a deposition taken on November 11, 1983, Dr. Derbenwick was of the opinion that claimant's cervical radiculopathy may have been aggravated by the industrial accident of May 1982, but she felt the accident was not the primary event. The doctor recommended a CT scan of claimant's neck and an EMG on his right arm.
Dr. Derbenwick was deposed a second time on May 4, 1984. Based on the reports of the medical tests she had recommended, Dr. Derbenwick modified her earlier diagnosis and determined that claimant did not have any evidence of a radiculopathy involving his right arm. According to Dr. Derbenwick, claimant's condition requires psychiatric care because he is suffering from a pain syndrome that she could not account for neurologically. When questioned by counsel for the employer and carrier regarding causal connection or lack of causal connection between claimant's pain syndrome and the industrial injury, Dr. Derbenwick stated the medical history reflects that the industrial injury was the "final straw" for claimant in a series of other medical problems. She recommended that claimant have a psychiatric evaluation.
The deputy found no competent substantial evidence to support a finding that claimant "has sustained or harbors any disability, impairment, bodily anomaly or psychiatric syndrome which, within reason and logic, can be said to be causally related to the [industrial] injury." Since she deemed there was no causal relationship between claimant's injury and his current condition, the deputy denied the claim for benefits, attorney's fees, and costs.
Claimant contends that pursuant to Section 440.13(1), Florida Statutes (1981), and the recommendation of Dr. Derbenwick, the deputy erred in refusing to order the employer and carrier to provide a psychiatric evaluation for him, and in refusing to award attorney's fees. We agree with claimant on point one and reverse the denial of a psychiatric evaluation.
The applicable portion of Section 440.13(1) provides:
the employer shall furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon or other recognized practitioner, nurse or hospital and for such period as the nature of the injury or the process of recovery may require, ...
In Bryant v. Elberta Crate & Box Co., 156 So.2d 844, 845 (Fla. 1963), the court said the test for ordering a psychiatric evaluation and inferentially all other medical benefits is "whether the claimant adequately demonstrated that such further psychiatric and medical benefits were reasonably required by the... `nature of the injury or the process of recovery.'"
*723 This court has repeatedly held that "where there has been a physical accident and claimant's disability is increased or prolonged by traumatic neurosis or conversion hysteria, the claimant's full disability, including the effects of the neurosis, is compensable." Racz v. Chennault, Inc., 418 So.2d 413, 415 (Fla. 1st DCA 1982). See also: City of Winter Park v. Bowen, 388 So.2d 1376 (Fla. 1st DCA 1980).
The deputy's order contains an express finding that claimant suffered a work related injury. In addition, the testimony of claimant's treating physician constitutes competent substantial evidence, based on reasonable medical probability, that claimant's continuing need for treatment of his right arm is a result of his industrial injury. Although Dr. Derbenwick found no neurological basis for claimant's right arm pain, she felt the industrial injury constituted the "final straw" psychologically in claimant's pain syndrome, and recommended that claimant have a psychiatric evaluation. All of the competent, substantial evidence reflected a need for a psychiatric evaluation. We hold, therefore, that claimant has demonstrated that a psychiatric evaluation was reasonably required by the nature of the injury and the process of recovery, and the deputy erred in denying such psychiatric evaluation.
As the second point on appeal, claimant alleges that employer and carrier acted in bad faith in refusing to authorize a psychiatric evaluation, and seeks an attorney's fee pursuant to the bad faith provision of Section 440.34(3)(b), Florida Statutes (1981), if this court requires such an evaluation. This allegation is without merit. The record reflects that no evidence was offered on the issue of bad faith on the part of the carrier, nor did claimant request the deputy to make a determination of bad faith as required by Section 440.34(3)(b) as a condition precedent to an award of an attorney's fee. Therefore, we affirm the deputy's denial of attorney's fees.
The order below is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
MILLS and BARFIELD, JJ., concur.