WIGGINTON, Judge.
The claimant brings this appeal from the order of the Judge of Compensation Claims denying his claim for medical treatment and payment of past medical bills on the basis that claimant sustained a new injury which resulted in the need for further ongoing treatment unrelated to the industrial accident. For the following reasons, we reverse.
On October 11,1988, claimant injured the back of his head, left shoulder, neck and chest in an industrial accident. He subsequently received treatment from Dr. Dus-seau, a neurosurgeon, and Dr. Williams, a chiropractor. His last treatment with Dr. Williams was in November 1988, and he last saw Dr. Dusseau concerning his neck injury in February 1989. Thereafter, he did not again visit Dr. Dusseau until late June 1989 complaining of a major flare-up of pain in his neck. He reported to Dr. Dusseau that just a few weeks prior to his visit, he had attempted to water-ski without incident, but began to feel the onset of pain in his neck the next day.
The JCC relied on Dr. Dusseau’s deposition testimony to the effect that the treatment required after June 21, 1989, was related to the water-skiing incident and not to the industrial accident, for which claimant had not received treatment since February 1989. In short, the JCC concluded that claimant sustained a subsequent intervening accident when he attempted to water-ski. Based on the record before us, we must disagree.
First, we disagree that Dr. Dus-seau’s testimony supports the conclusion that the treatment he rendered to claimant after June 21, 1989, related to the water-skiing incident and not to the industrial accident. Because Dr. Dusseau’s testimony was rendered by way of deposition, we are on equal footing with the JCC in analyzing the legal effect of his testimony. Jones v. Citrus Central, Inc., 537 So.2d 1123 (Fla. 1st DCA 1989). We find Dr. Dusseau’s deposition testimony highly equivocal on the issue of causation. Dr. Dusseau testified that claimant’s initial industrial accident resulted in a soft tissue *1086 injury which could be expected to flare-up and which could result in continued neck pain. He further described the symptoms and complaints claimant related in June as being no different from his complaints described in February. The doctor also stated rather inconclusively that the treatment in June resulted from “either a separate injury or an aggravation of his old injury.” Significantly, he found it difficult to say within a reasonable degree of medical probability what effect claimant’s water-skiing episode alone would have had without the existence of his underlying problem, since he did not recall exactly the nature of claimant’s water-ski injury...
The only evidence concerning the water-skiing “incident” was the testimony of claimant. His testimony reflected that he was an accomplished and experienced water-skier, and he related that there had been no accident during the time he skied and that he only began to experience pain the following day. There is no evidence that claimant was medically restricted from water-skiing or that he was negligent in any manner when he did ski in June. While the JCC questioned claimant’s credibility, any lack of credibility still cannot support the JCC’s finding on causality where there is no competent and substantial evidence that the symptoms suffered by claimant were related solely to claimant’s act of water-skiing.
Second, and more important, we disagree with the JCC that there was in fact a subsequent intervening _accident in this case. As noted above, there is no evidence of any accident or significant incident experienced by claimant when he water-skied in June. At most, we could say that claimant’s act of water-skiing resulted merely in triggering a major flare-up of his industrial accident. This is significant where there is no direct medical evidence by which the JCC could find — and, in fact, he did not find — that claimant had reached MMI prior to his attempt to water-ski. Therefore, claimant was still in a period of recovery when he returned to Dr. Dusseau complaining of a major flare-up of his neck and shoulder pain, and we find nothing in the record or m Dr. Dusseau s testimony regarding claimant’s episode of water-skiing that would indicate a break in the causal chain between the industrial accident and the claimant’s subsequent need for medical care. Accordingly, we reverse the JCC’s order denying the claim for medical benefits and remand for an appropriate award of said benefits.
ERVIN and WOLF, JJ., concur.